# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

RON WOLTERS,

        Petitioner,             :       Case No. 2:23-cv-03988

  - vs -                   District Judge James L. Graham
                              Magistrate Judge Michael R. Merz

WARDEN, Belmont Correctional
  Institution,

                             :
        Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus pursuant to 28 U.S.C. § 2254 is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8), and Petitioner' Reply (ECF No. 15).

**Litigation History**

On February 26, 2020, Petitioner was indicted by the grand jury of Guernsey County, Ohio, on eight counts of rape and eight counts of gross sexual imposition ("GSI)(Indictment, State Court Record, ECF No. 7, Ex. 1).  The trial jury convicted Wolters on three of the eight rape counts and all eight GSI charges.  He was sentenced to three terms of imprisonment of twenty-five years to life on the rape counts, to be served consecutively, and five years on each of the GSI counts to be

1

served concurrently with each other and with the rape sentences. *Id.* at Ex. 15.

Wolters appealed to the Ohio Fifth District Court of Appeals which affirmed the conviction. *State v. Wolters*, 185 N.E.3d 601 (Ohio App. 5th Dist. Feb. 24, 2022), app. jurisdiction declined, 167 Ohio St.3d 1407 (2022). On October 24, 2022, Wolters filed an application to reopen under Ohio R. App. P. 26(B)(State Court Record, ECF No. 7, Ex. 23), which the Fifth District denied. *Id.* at Ex. 24. The Ohio Supreme Court again declined to accept jurisdiction of an appeal. *Id.* at Ex. 27.

On December 1, 2023, Wolters filed his Petition in this Court with the assistance of counsel, pleading the following grounds for relief:

> **Ground 1:** The State of Ohio failed to produce sufficient evidence to convict the appellant of the counts in the indictment in violation of his right to due process under the Fifth Amendment made applicable to all state criminal prosecutions by the Fourteenth Amendment to the federal constitution.
>
> **Ground 2:** The trial court violated petitioner's right to confrontation by allowing the alleged victim to testify via closed circuit.
>
> **Ground 3:** Petitioner was denied effective assistance of counsel guaranteed by the Fifth, Sixth amendments made applicable to the State of Ohio by the Fourteenth Amendment to the federal constitution.

(Petition, ECF No. 1, PageID 7-13).

# Analysis

### Ground One: Conviction on Insufficient Evidence

In his First Ground for Relief, Wolters asserts that the State failed to produce sufficient evidence to convict him on the three rape and eight GSI charges.

2

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks,* 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra*.  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States,* 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all

3

> sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer,* 541 F.3d 652 (6th Cir. 2008); accord *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews,* 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson,* 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Wolters raised insufficiency of the evidence as his First Assignment of Error on direct appeal.  The Fifth District combined its analysis of this claim with Wolters claim that the verdicts were against the manifest weight of the evidence and decided them together as follows:

> {¶13} We address Appellant's first and second assignments of error together, as they raise related issues of whether the judgment convicting Appellant of three counts of rape and eight counts of gross sexual imposition is against the manifest weight and sufficiency of the evidence. Appellant argues the victim's testimony was contradictory and not credible, and the evidence to support all but a single count of rape was insufficient, and also against the weight of the evidence.
>
> {¶14} We note at the outset the State did not provide this Court with a statement *607 of facts in its brief, and further responded to Appellant's argument without citing to facts in the record, instead arguing in conclusory fashion the judgment is not against the manifest weight or sufficiency of the evidence.
>
> {¶15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).
>
> {¶16} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

5

{¶17} Appellant was convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(b):

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶18} "Sexual conduct" is defined by R.C. 2907.01(A):

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶19} At trial, the victim testified to only one incident in which Appellant engaged in vaginal intercourse with her. However, the forensic interview of the victim was recorded, and the video was played for the jury and admitted into evidence at trial. During the interview, the victim stated Appellant touched her vagina with her finger, on the inside. She also stated Appellant touched the inside of her vagina with his penis. When asked how many times Appellant had sex with her, the victim held her hands about shoulder distance apart, without stating a number. She said they had sex "a lot" of times.[2] The victim stated Appellant had sex with her in her room at his house, and also in nana's room. She stated Appellant had his shirt on but not his pants. He would lay down on the bed, and she would get on top. Appellant then had "ejections" on his leg. She and Appellant would watch television, then have more sex.

{¶20} While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3, *quoting State v. Nivens*, 10th Dist. Franklin App. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). In a case involving inconsistencies in the testimony of a seven-year-old child victim, this Court noted, "The jury was free to use their life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, 2022 WL 278398, ¶ 31. We

6

therefore find inconsistencies in the five-year-old child victim's statements regarding the sexual conduct does not render the judgment against the manifest weight or sufficiency of the evidence.

{¶21} Further, although not conclusive of sexual abuse, there was physical evidence which corroborated the jury's finding of guilt on three counts of rape. Elisha Clark, a nurse practitioner at the Children's Advocacy Center, conducted a physical examination of the victim. Clark found three notches, or partial tears, on the victim's hymen. Using the face of a clock for reference, she testified the notches were found at 4:00, 6:00 and 9:00. She testified any notches located between 3:00 and 9:00 can be indicative of sexual abuse. Further, the victim experienced urinary incontinence during the exam despite having used the restroom before the exam. The victim stated this had been happening since pap pap put his wee wee in her cookie. Although Appellant presented expert testimony to challenge Clark's findings, we find there was sufficient evidence from the victim's statements made in her forensic interview and the physical findings by Clark to support the convictions of three counts of rape. Further, we find the jury did not lose its way in convicting Appellant of three counts of rape. The judgment convicting Appellant of three counts of rape is supported by sufficient evidence, and is not against the manifest weight of the evidence.

{¶22} Appellant was also convicted of eight counts of gross sexual imposition in violation of R.C. 2907.05(A)(4):

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶23} "Sexual contact" is defined by R.C. 2907.01(B):

> "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

{¶24} During the forensic interview, the victim did not tell Myers how many times she and Appellant had sex, but rather used the general term "a lot" and held her hands about shoulder width apart when asked how many times the sexual abuse occurred. Myers counted out ten colored pencils and asked the victim to use the pencils to count out how many times she and Appellant had sex without differentiating between the number of occasions when sexual conduct versus sexual contact occurred. The victim counted out eight colored pencils. The victim also told Clark she was at the Child Advocacy Center because Appellant put his fingers and penis in her vagina at least eight times. Myers testified at trial if she could do the interview over again, she would not have introduced the pencils because the victim had already established it happened more than one time, and Myers was unsure what would have happened had she laid out thirty pencils instead of ten pencils. However, we find the victim's statement it happened eight times is sufficient evidence, if believed by the jury, to support the convictions of eight counts of gross sexual imposition.

{¶25} The jury appears to have rejected the number of "eight times," as produced by the colored pencils and the victim's statement to Clark, in its deliberations as to rape, convicting Appellant of three counts while acquitting him of five. However, although the victim did not differentiate between sexual conduct and sexual contact when she stated she and Appellant had sex "a lot" of times, or when she stated they had sex eight different times, the jury could conclude based on her statements Appellant engaged in sexual contact with the victim eight times, while he only engaged in sexual conduct with the victim three times, as supported by the physical evidence in the case.

{¶26} The victim testified to numerous separate acts which would constitute sexual contact but not sexual conduct. The victim stated Appellant touched her butt "several times." We recognize the victim did not specifically clarify whether these touchings were separate in time and distinct from the three rape convictions. The victim also stated in her interview Appellant had her touch his penis, though again not indicating whether this touching was separate in time and distinct from the other incidents of sexual contact. In addition, Appellant stated in his phone call to his wife from the jail the charges included seven counts which were overcharged. The jury could draw the conclusion from this statement Appellant believed seven of the rape charges were overcharged, but impliedly admitted to engaging in sexual contact with the victim on at least seven additional occasions. We therefore find the jury's verdict was not against the

> manifest weight of the evidence as to eight counts of gross sexual
> imposition.

*State v. Wolters, supra.*

Respondent defends Ground One on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Wolters is the step-grandfather of the five-year old victim in this case. *Wolters, supra,* at ¶ 2. In his Reply, he acknowledges that *Jackson v. Virginia* provides the governing standard on his First Ground for Relief and that this Court must defer to the Fifth District's decision if it is a reasonable application of *Jackson* (Reply, ECF No. 15, PageID 2175). The Reply focuses on the conflict of testimony between Elisha Clark, a nurse practitioner at the Children's Advocacy Center, who testified for the State, and that of a non-examining pediatrician, Dr. Guertin, who relied on a review of records.

This is an argument about the weight of the evidence and ignores the testimony of the child victim about the sexual behavior of Petitioner. The Sixth Circuit has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of

guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6ᵗʰ Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6ᵗʰ Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6ᵗʰ Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

The argument also ignores the corroborative impact of Wolters' recorded calls to his wife wherein he does not deny engaging in sexual contact with his step-granddaughter, but merely claims to have been overcharged. The Fifth District's decision on sufficiency of the evidence is entitled to deference. Petitioner's First Ground for Relief should be denied.

**Ground Two:  Violation of Confrontation Clause Rights**

In his Second Ground for Relief, Petitioner asserts his right to confront his accuser was violated when the victim was allowed to testify by closed circuit television. Wolters raised a claim about the propriety of using closed circuit television as his Fourth Assignment of Error on direct appeal and the Fifth District decided it as follows:

> {¶36} In his fourth assignment of error, Appellant argues the trial court erred and denied his right to confront witnesses against him by allowing the victim to testify via closed circuit television pursuant to R.C. 2945.481(E), which provides:
>
>> (E) For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being

10

conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:

(1) The persistent refusal of the child victim to testify despite judicial requests to do so;

(2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;

(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

{¶37} The Ohio Supreme Court has held testimony of a child victim by videotaped deposition does not violate the Confrontation Clause, as long as the defendant has an opportunity to view the child and the child's demeanor, and has a full opportunity to cross-examine the child. *State v. Self*, 56 Ohio St. 3d 73, 77, 564 N.E.2d 446 (1990). We find the procedure employed in the instant case similarly did not violate the Confrontation Clause, as Appellant was able to see the victim's demeanor, and his counsel had a full opportunity to cross-examine the child. *See State v. Lukacs*, 1st Dist., 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 30 (allowing victim's brother to testify by remote video outside the courtroom did not violate the Confrontation Clause where defendant had ample opportunity to cross-examine the witness and see him over the live video feed).

{¶38} The standard of review in determining whether a trial court has made sufficient findings under R.C. 2945.481 to permit a child to testify via closed-circuit video is whether those findings are "supported by competent, credible evidence." *State v. Powers,* 4th Dist. Scioto No. 19CA3868, 2020-Ohio-7042, 2020 WL 8365983, ¶ 61.

{¶39} After an evidentiary hearing, the trial court found requiring the victim to testify in court would further traumatize her, and would raise the risk factors for other mental distress issues, including depression and anxiety. The trial court concluded there was a substantial likelihood the victim would suffer serious emotional harm if she testified in court in front of Appellant.

{¶40} At the hearing, the State presented the testimony of Elisha Clark, the nurse practitioner who conducted the physical examination of the victim. Clark observed the interview with the child. Clark testified through her training, education, and experience

11

she learned how to identify a child who may be suffering emotionally from having to speak about a trauma and who might be further traumatized by having to speak about the abuse suffered. She testified such signs include a child victim unable to use words and instead pointing to their genitals, talking about feeling sad or mad, pointing to a doll instead of themselves, covering their face, or appearing tearful. Clark testified during the interview, the victim in this case pointed to her genitals instead of using words. The victim told the interviewer when the abuse happened, it made her feel sad. In Clark's opinion, the victim may have a hard time articulating what happened to her in front of Appellant due to the victim's age and her relationship to Appellant. Clark further stated if the victim testified in front of Appellant, there was a substantial likelihood the victim could suffer serious emotional trauma in the future, creating a risk of the victim later developing post-traumatic stress disorder, anxiety, or depression.

{¶41} We find the trial court's finding was supported by competent, credible evidence presented through the testimony of Elisha Clark. The fourth assignment of error is overruled.

*State v. Wolters, supra.*

There is a substantial question whether this issue was fairly presented to the state courts as a federal constitutional issue. In his Brief on appeal, Wolters uses the word "confrontation," but he argues his Fourth Assignment of Error solely in terms of Ohio law; no federal cases are cited, nor is the Sixth Amendment mentioned. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

However, the Respondent has not asserted this claim is procedurally defaulted for lack of fair presentation, but merely reminds the Court and Petitioner that this Court cannot grant habeas corpus relief on the basis of a violation of Ohio law.  The analysis of Petitioner's Second Ground for Relief, therefore, will be confined to federal law.  Wolters is entitled to habeas relief only if the Fifth District's decision is an unreasonable application of Supreme Court precedent.

Wolters' Reply does not suggest any Supreme Court precedent that was unreasonably applied by the Fifth District, perhaps because no Supreme Court precedent was cited to the Fifth District.  The relevant precedent is *Maryland v. Craig*, 497 U.S. 836 (1990).  In that case the Court upheld the constitutionality of a Maryland statute permitting the use of closed circuit television in cases where the trial court made case-specific findings that the procedure was necessary to prevent trauma to child abuse victims.  The Ohio statute relied on by the Fifth District in this case appears to be tailored to the *Craig* decision so that a finding that the trial court complied with the statute would imply *a fortiori* compliance with the Confrontation Clause.

The findings of fact by the trial and appellate courts in this case demonstrate that Wolters was not deprived of his Confrontation Clause rights by the use of closed circuit television.  The finding was case specific and based on the testimony of a nurse with a great deal of experience in child abuse cases.  Importantly, Petitioner presented no evidence at all in the in limine hearing on this issue.  His sole claim appears to be that Nurse Clark was not qualified enough.  But the Supreme Court in *Craig* did not impose any particular qualifications on the testimony needed to satisfy the Sixth Amendment. Wolters' Second Ground for Relief should be dismissed with prejudice.

**Ground Three:  Denial of Effective Assistance of Counsel**

Although the Petition is unclear on its face, it appears Wolters is claiming he received ineffective assistance of appellate counsel when his appellate attorney failed to raise a number of claims of ineffective assistance of trial counsel.  His direct appeal did not include any ineffective assistance claims.

However, on October 24, 2022, Wolters filed an untimely application for reopening his direct appeal.  This is in fact the only method of litigating a claim of ineffective assistance of appellate counsel in the Ohio courts.  *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).   Wolters claimed appellate counsel should have raised the following assignments of error:

1. Appellate counsel was ineffective for failure to move to strike appellee's reply brief on the grounds it was untimely.

2. Appellate counsel was ineffective for failure to raise the following instances of ineffective assistance of trial counsel:

   1. Failure to read an email of the rebuttal testimony of Nurse /clark and thus be prepared to cross-examine her on it.

   2. Failure to object to leading questions put to the victim at trial.

   3. Failure to object to the prosecutor's statement in closing that the case is about what happened to the victim and not what the experts testified to.

   4. Failure to object to the prosecutor's comments that the pattern of events started in February 2017.

   5. Failure to ask why the investigation was not turned over to someone else when Roy Angler went on vacation from July 1, 2020, to July 20, 2020.

The Fifth District Court of Appeals excused Wolters' late filing and decided his ineffective assistance of appellate counsel claims on the merits.  As to the failure to move to strike the State's brief, the Fifth District essentially found Wolters had not shown prejudice from the failure because "This Court is charged with reviewing the record and law to determine the issues raised by Appellant on direct appeal with or without the assistance of a brief filed by the State in this case." *State v. Wolters,* Case No. 21 CA000008 (State Court Record, ECF No. 7, Ex. 24, PageID 243). As to the failure to raise the five claims of ineffective assistance of trial counsel, the Fifth District also held there had been no prejudice because "Appellant has not demonstrated any of the alleged instances of misconduct by his trial counsel would have changed the result of the proceeding below." *Id.* at PageID 244.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel.

Because the Fifth District decided Petitioner's ineffective assistance claims on the merits,

its decision is entitled to deference unless Petitioner can show it was an unreasonable application of *Strickland*.  In his Traverse, however, Petitioner does nothing more than re-assert the claim of prejudice in completely conclusory fashion.  He could at least have attempted that showing by citing cases in which the Fifth District or other Ohio courts had overturned a conviction based on a trial attorney's failures parallel to the ones alleged here.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 15, 2024.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge

16